THE PEOPLE, EX REL. J. W. HUSTON, RESPONDENTS,
*v.* A. HEED AND JOHN C. HENLY, APPELLANTS. /

UNITED STATES DISTRICT ATTORNEY.—The United States district attorney
has no right, power, or authority, except that conferred upon him by law
prescribing his duties.    The designation of "attorney for said terri-
tory," as used in our organic act, is synonymous with that of "the
attorney of the United States," in the organic act of Washington Terri-
tory.

TERRITORIAL GOVERNMENT.—It appears to have been the policy of the gen-
eral government to assimilate the new territories as nearly as possible to
the states.

DISTRICT ATTORNEY OF THE UNITED STATES.—Congress having failed to
provide that this officer should prosecute in cases arising under territorial
laws, he can act as prosecuting attorney only when the courts are exer-
cising jurisdiction as circuit and district courts of the United States.

APPEAL from the district court of Ada county.

*Samuel A. Merritt, R. E Foote,* and *H. E. Prickett,* for
the appellants.

*H. L. Preston and J. W. Huston,* for the respondents.

WHITSON, J., delivered the opinion; NOGGLE, C. J., con-
curring, LEWIS, J., dissenting.

The question involved in this case is, whether or not the
relator, who is admitted to have been appointed under the
tenth section of the organic act of the territory, is the public
prosecutor in all matters of offense against the territory, as
well as all those arising under the constitution and laws of the
United States, which question is presented by the demurrers
of the defendants to the relator's complaint, and the stipu-
lations of the parties.    The tenth section of the organic act
of the territory provides " that there shall be appointed an
attorney for said territory, who shall continue in office four
years, and until his successor shall be appointed and quali-
fied, unless sooner removed by the president of the United
States, and who shall receive the same fees and salary as the
attorney of the United States for the present territory of
Washington." This is the only provision of law relating
directly to this officer, and as there appears to be no law of
congress prescribing his duties—and in fact none relating

directly to the duties of any of the attorneys appointed for the respective territories of the United States—we are compelled to resort to other sources of information to determine the question.

The law districting the United States and prescribing the duties of the judges was passed in 1789, and in that act it was provided " that there shall be appointed in each district a meet person, learned in the law, to act as attorney for the United States in such districts, who shall be sworn or affirmed to the faithful execution of his office, whose duty it shall be to prosecute in such district all delinquents for crimes and offenses cognizable under the authority of the United States, and all civil actions in which the United States shall be concerned." From time to time, as new districts were formed within the states, similar provisions were made respecting the appointment of district attorneys and prescribing their duties.

The question, therefore, very naturally arises: " Where does the United States district attorney for a territory get the authority to appear as attorney in any case where the United States is not a party in interest?" He certainly can claim no right except that vested in him by law, and it would be a violent presumption to conclude that, because he is " an attorney for said territory," therefore, he would have greater power or authority than is conferred by the general and subsequent acts, prescribing generally what duties district attorneys shall perform, when the very act creating him such attorney is silent on the subject, except by implication, and that implication against him. The relator is the attorney of the United States for the territory, which we have a right to conclude by implication, from the fact that the act says that he " shall receive the same fees and salary as the attorney of the United States for the present territory of Washington." The organic act of that territory is in the exact language of our own, " that there shall be appointed an attorney for said territory," etc., and the organic act, under which the relator claims, designates the attorney for Washington territory as " the attorney of the United States." The designation, " attorney for the terri-

tory," has been used by congress synonymously with "attorney of the United States for the territory," and it must be presumed that congress meant one and the same thing by the two forms of expression.

It appears to have been the policy of the general government, for several years, in forming new territories, to assimilate them as nearly as possible to the states, at the same time reserving that supervisory control over them which is intended by that clause in the constitution which provides that congress shall have power to make all needful rules and regulations respecting the territory of the United States. Congress has made what it deems to be, we presume, all needful rules and regulations respecting this territory, by the appointment of certain officers, the passage of certain laws, and the creation of a legislative assembly with power extending to all rightful subjects of legislation consistent with the constitution of the United States and the provisions of the organic act.

The legislative assembly at its third session provided for three district attorneys for the three several districts of the territory, who were to be the public prosecutors within their respective districts in all matters of offense against the laws of the territory. The legislative assembly at its fifth session repealed the act of the third, and provided in lieu thereof that there should be elected a public prosecutor for each county in the territory. This last act congress, on the fifteenth day of July, 1870, disapproved of and annulled. Congress, therefore, not only declared that a district attorney should not be elected in each county, but disapproved of and annulled that part of the act of the fifth session repealing the act of the third, which provided for three district attorneys, and if the repeal by the legislature of the act of the third session was disapproved of by congress, as a necessary consequence the act of the third session was virtually approved of. Whether or not the disapproval by congress of the repeal, by the legislature at its fifth session, of the act of the third, would have the effect to reinstate the act of the third session, we do not decide. The act of the third session was upon the statute book for more than

four years—and a similar act had been upon the statute book for two years prior to the one of the third—and while congress had disapproved of laws passed by the legislature, and in some instances restricted its power, this law had not met with a disapproval, while the very act, a part of which repealed it, met with a disapproval at once.

It will not be contended but that congress might provide that this officer should prosecute in all cases where there should be a violation of the laws of the territory, but having failed to do so, while the duties of all other territorial officers have been prescribed with the utmost particularity and certainty, no other conclusion can be arrived at than that the relator would only be the attorney when the courts of the territory were exercising their jurisdiction as circuit and district courts of the United States.

It certainly could not be maintained that a violation of the laws passed by the legislative assembly would be a violation of the laws of the United States, and if such position would be untenable, how could the relator be acting "as the attorney of the United States for the territory" when prosecuting offenders for a violation of territorial laws?

At the time of the establishment of a territorial government in Florida, it was provided that "there shall be appointed, in the said territory, two persons learned in the law, to act as attorneys for the United States as well as for the territory." There can be no doubt about the scope of the duties devolving upon the two officers created by that act, because they were to act as attorneys for the United States as well as for the territory;" that is, they were to act for both—their duties each to be dual—one of them for east and the other for west Florida.

This serves to illustrate that congress has at all times, in providing a district attorney for each of the territories, intended to make a distinction between the prosecution of cases arising under the laws of the territory and those arising under the laws of congress, and in such appointments to confer the two powers directly and distinctly when it was intended that both should be exercised. In the case of Florida, the distinction was clearly indicated by

prescribing two duties for each of the attorneys of that territory to perform; and if there be two duties for public prosecutors to perform in the territories of the United States, how could a prosecutor perform the two with no authority except to perform the one?

This view of the case, as to the two classes of duties to be performed in the prosecution of persons for a violation of the laws of the United States and of the territory, is further sustained by several acts of congress, which tend to explain what the highest law-making power of the government intended. The act of June 16, 1856, provided that "the judges of the supreme court in each of the territories, or a majority of them, shall, when assembled at their respective seats of government, fix and appoint the several times and places of holding the several courts in their respective districts, and limit the duration of the terms thereof; provided, that the said courts shall not be held at more than three places in any one territory." The act of June 14, 1858, seems to have been a modification or amendment of that of 1856, and provides "that the judges of the supreme court of each territory of the United States are hereby authorized to hold court within their respective districts, in the counties wherein, by the laws of said territories, courts have been, or may be established, for the purpose of hearing or determining all matters and causes except those in which the United States is a party; provided, that the expenses thereof shall be paid by the territories, or counties, in which said courts may be held, and the United States shall, in no case, be chargeable therewith."

The act of March 2, 1867, amendatory of the fifteenth section of the organic act of Idaho, provides, "that the judges of the supreme court of said territory, or a majority of them, shall, when assembled at the seat of government of said territory, define the judicial districts of said territory, and assign the judges who may be appointed for said territory to the several districts, and shall also fix the times and places for holding court in the several counties or subdivisions in each of said judicial districts, and alter the

times and places of holding the courts, as to them shall seem proper and convenient."

From all three of these acts we are to conclude: 1. That in all causes where the United States is a party, trials can be had in but one place in each district; 2. That in all causes where the territory is a party, trials can be had in such counties or subdivisions in each judicial district as shall seem proper and convenient to judges; and 3. That the United States is in no case chargeable with the trial of any cause where the United States is not a party.

It certainly can not, with reason, be contended that the crimes of arson, burglary, rape, robbery, or murder are violations of the laws of the United States, in this territory, any more than they would be in the state of California. The legislature has provided for the manner of the trial of all such offenses, and the mode and extent of the punishment in all such cases; and if it be the right of the relator to appear as the public prosecutor in all cases where there is a crime committed against the laws of the territory, it is his duty so to appear; and, if it is his duty, it is his right to be paid.

Congress has said that " the United States shall in no case be chargeable" with such expenses, and has, by an act of July 15, 1870, relating to Idaho, enacted, " that all acts and parts of acts heretofore passed by the legislative assembly of said territory that provide for the payment of salaries or extra compensation out of the territorial treasury, to officers holding commissions by federal appointment, in said territory, are hereby disapproved of and annulled; and the legislative assembly is hereby prohibited from making any appropriation from the treasury of said territory to any such officers or persons, under any pretense of adding to or increasing their compensation as fixed by the United States." From which we must understand that the general government intends to confine the relator to such fees and salary as are provided for him by the acts of congress. Again, by act of congress of March 3, 1805, it was provided that "the superior courts of the several territories of the United States, in which a district court has not

been established by law, shall, in all cases in which the United States are concerned, have and exercise within their respective territories the same jurisdiction and powers which are by law given to, or may be exercised by, the district court of Kentucky district;" and by act of congress of April 18, 1806, it was enacted, "the provisions of the act entitled 'an act for providing compensation for marshals, clerks, attorneys, jurors, and witnesses in the courts of the United States, etc.,' passed February 28, 1799, be and the same is hereby extended to the territories of the United States, so far as the said act may relate to the provisions of the act entitled 'an act to extend jurisdiction in certain cases to the territorial courts,' passed March 3, 1805."

From the last act quoted we are to understand that when the United States district attorneys for the territories were in the discharge of their duties in aid of the territorial courts, when transacting such business as was conferred upon them by the act of March 3, 1805—that is, were engaged in trying cases in which the United States were concerned—then, as to compensation, the act of February 28, 1799, was to control. These acts, so far as the question of compensation is involved, are still in force; except that the fee bill act has, from time to time, been changed, amended, or modified, but in no instance has its application to the district attorneys for the territories been changed, and the fee bill act of February 26, 1853, was so amended by the act of March 2, 1855, as to apply to the then existing territories of Minnesota, Utah, and New Mexico, as fully in all particulars, as if the word "territories" had been used after the word "states," and had read, "in the several states and in the territories of the United States." To assume any other position than the one we think correct, would be to require the relator to perform duties for which congress has said that the general government will neither pay him nor allow the territory to pay him, and we doubt if the relator would desire even that such a duty should be imposed upon him without compensation, even if the government should be so unjust and unreasonable as to require it.

While we do not doubt the power of congress to do as it

will with a territorial government, even to the doing away with it entirely, the line between the United States and territorial authority is as plain to us, under existing laws of the general government, as is the line between federal and state authority. While very little authority has been extended to the territories, in comparison with that to which the states are entitled, so far as such authority has been extended, it can be exercised as freely and fully as state authority; both being subject to constitutional restrictions and checks, vested in that supreme power, the general government of the United States, whenever either shall have gone beyond its authority.

Judgment of the court below reversed.